## THOMPSON vs. MACK and others.

1830.
FirstCircuit.

Thompson
vs.
Mack.

Where M. gave T. a mortgage, April 14, 1831, as indemnity against a certain debt for which T. was liable, which mortgage was recorded July 24, 1833, and T. was sued and had the debt to pay ; and April 9, 1833, M. conveyed, by an absolute deed, the lot mortgaged, together with another lot, to C., and C. gave M. an agreement in writing, to re-convey the lots to M. upon M's paying the amount of his debt (about $150,) due to C., and shortly afterwards, M. being in embarrassed circumstances, applied to C. for a further credit, and in order to obtain such further credit, M. gave up the agreement from C. to re-convey, and C.'s deed from M. was recorded July 20, 1833, (being four days previous to the record of T's mortgage,) and the writing or agreement to re-convey from C. to M. was not recorded, and June 26, 1834, C. conveyed the premises to K., for the amount due from M. to C., and June 3, 1835, K. conveyed to D. and R., it was held that the deed from M. to C. was a mortgage in its inception, and continued so to be, (notwithstanding M. had delivered up to C. his agreement to re-convey,) and ought to have been recorded as such, and that the recording of that deed, as a deed, though the record was prior to that of T's mortgage, could give it no priority over that mortgage.

Where a party claims priority under or by virtue of the statute regulating the registry of deeds and mortgages, he must show a compliance with its provisions in order to entitle him to such priority.

April 30.

This was a bill to foreclose a mortgage, and stated that the complainant, August 11, 1830, purchased a quantity of drugs and medicines to the amount of $197 23 of the firm of Lawrence, Keese & Co., of the city of New York.   That afterwards, and before the goods were received, it was agreed between the complainant and Mack, that the latter should take the drugs and medicines and pay for them; and that Mack, on the 14th April, 1831, gave a mortgage to the complainant on lot number fifty-seven, in the village of Pontiac, to indemnify him against the payment of the debt due to Lawrence, Keese & Co., which mortgage was afterwards recorded, July 24, 1833; that Mack had neglected to pay Lawrence, Keese & Co., who had sued the complainant for the price of the drugs and medicines, and recovered a judgment against him of $265 47 damages, and $8 00 costs, which the complainant had paid; that, April 9, 1833, Mack conveyed, by an absolute deed, the lot mortgaged, (together with another lot in Pontiac,) to the defendant Chamberlain, whose deed was recorded July 20, 1833, four days previous to defendant's mortgage.   The bill charged that the deed from Mack to Chamberlain, although ab-

solute on its face, was intended by the parties to operate as a First Circuit.
mortgage only, and was given to secure a debt due from Mack,
to Chamberlain; that Chamberlain had bound himself by bond,
or other writing, to re-convey the premises on the payment of
the debt, and that such bond or writing for a re-conveyance,
was not recorded, by Chamberlain, with his deed; it further
states, that June 26, 1834, Chamberlain conveyed the lot to
the defendant Keeney, who, June 3, 1834, conveyed it to the
defendants Draper and Richardson; and Chamberlain, Keeney,
Richardson and Draper, were severally charged with notice
of complainant's mortgage at the time of their respective pur-
chases.

The defendants put in several answers. Mack, in his an-
swer, admits the purchase of the drugs, &c., but not till after
they had been received by Thompson, and put into Mack's
store, for sale; states that Thompson put a clerk in the store
to sell the goods; that the clerk sold a considerable portion of
them, and used part of the money, the proceeds of the sales,
for his private purposes; that Mack aided in selling the goods,
&c.; that April 14, 1831, Mack purchased of Thompson, the
drugs unsold, and the debts due for those which had been sold,
and agreed to indemnify Thompson against the debts due by
him to Lawrence, Keese & Co., and to pay the $32 for trans-
portation, and that Mack and wife, on the same day, executed
the mortgage mentioned in the bill, as indemnity to Thomp-
son; that the mortgage was not recorded until the time stated
in the bill; that, December 10, 1832, he paid to Thompson
$56 98, to be applied on the mortgage, and took receipt to
that effect; that Thompson is also indebted to him in the sum
of $91, for services, and also owes him for rent, and on other
accounts, as he believes, to the amount of the debt; denies any
knowledge of the judgment against Thompson; admits the
deed to Chamberlain, of April 9, 1833, and its record, and that
he took from Chamberlain, a paper, not under seal, in which
Chamberlain agreed to re-convey the lots, if he should in a
short time, (could not state how long,) pay to Chamberlain the
amount due him, which was about $150; that he, Mack, being

in embarrassed circumstances, shortly afterwards applied to Chamberlain for further credit, and to obtain such credit, he gave up the agreement to re-convey, and surrendered all right, title, claim and equity of redemption in the premises; that he did not tell Chamberlain of Thompson's mortgage, and does not believe that Chamberlain knew of that mortgage; that the reason that two lots were deeded to Chamberlain, was that there was an incumbrance of dower on one of them; that Keeney bought the lots fifty-seven and fifty-two, of Chamberlain; that he never informed Keeney, and does not believe he knew of Thompson's mortgage, at the time he purchased the lots; that the sale to Keeney was not for the benefit of Mack or his family.

*Chamberlain*, in his answer, admits that Mack was indebted to him, and gave him a deed of lots number 57 and 52, April 9, 1833; denies that he had any notice of Mack's mortgage to Thompson. Further states that when Mack gave up the written agreement, he released and surrendered all right to redeem; that he paid Mack the full value of the premises, encumbered as they were by a claim of dower. That Keeney paid the full value for the lots; that at the time of making the deed to Keeney, he, Keeney, had no notice of Thompson's mortgage, to his knowledge. Keeney, in his answer, denies any knowledge of Thompson's mortgage at the time he purchased from Chamberlain, and until he had sold to Draper and Richardson; admits the deed from Mack to Chamberlain, of April 9, 1833, and deed from Chamberlain and wife to him, June 26, 1834. Denies all knowledge of any agreement other than the deed from Mack to Chamberlain, until after he sold to Draper and Richardson; that he cannot state the exact amount paid by him for the lots; that he gave full value, and purchased them for himself, &c. Admits the sale by him to Draper and Richardson, June 3, 1835, and their mortgage, &c., to him.

*Draper and Richardson*, in their answer, admit that they had notice of Thompson's mortgage, either before or after their purchase, but do not remember which.

R. Manning, for complainant.

The deed from Mack to Chamberlain, although absolute on its face, is nevertheless a mortgage. It was given to secure a debt to Chamberlain, who was to re-convey the premises when Mack paid him.

As a mortgage, the defeasance, or agreement to re-convey, should have been recorded with the deed, in the record of mortgages, as the statute requires. *Rev. Laws of* 1823, *page* 283 *and* 284, § 3. By the registry of it as a deed, instead of a mortgage, it did not, as a mortgage, gain priority over the complainant's mortgage. *Dey* vs. *Dunham*, 2, *J. C. R.*, 182; *Grimstone* vs. *Carter*, 3 *Paige*, 421; *James* vs. *Morey*, 2 *Cowen*, 246. The registry of it, as a deed, availed nothing. The registry of a legal instrument does not change the nature or effect, of the instrument. It does not change a mortgage into a deed, or a deed into a mortgage. Its only effect is to give priority to legal instruments which have been properly recorded. Whether, therefore, the defeasance was delivered up to Chamberlain before or after the complainant's mortgage was recorded, if after the deed had been recorded, cannot alter the case, for it could not make a good record out of what was before a bad record, or no record at all. From the testimony of Chamberlain, it appears the surrender of the defeasance was not intended to turn the mortgage into an absolute deed. He considered the deed afterwards, as he had done before, as security for the debt Mack owed him. The complainant's mortgage was recorded long before Keeney purchased of Chamberlain, and as Chamberlain's deed is not good, either as a deed or mortgage, against the complainant's mortgage, Keeney's deed certainly cannot be. If there was any doubt, that Chamberlain's deed continued to be a mortgage after the defeasance was surrendered, and it should be insisted the defeasance was given up to Chamberlain before the deed was recorded, the testimony is too vague and uncertain upon that point to take away the common law rights of the complainant. The defendants, when seeking to gain an advantage through the registry

First Circuit. law, should clearly show themselves entitled to it by a compliance with the law.

Thompson
*vs.*
Mack.

B. F. H. WITHERELL, for the defendant.

The defendants are entitled to have the bill dismissed and a decree for costs.

*1st.* Because Chamberlain was a purchaser without notice. *See* 2 *Ves. Jun.*, 453; 3 *Ves.*, 221; 4 *Ves.*, 383; 9 *Ves.*, 24.

Chamberlain took up the *writing* of defeasance *before* his deed from Mack was recorded; when that instrument was taken up, if not before his deed from Mack, became *absolute*.

By the *writing* or *article* to Mack from Chamberlain, Mack was to have but sixty days to redeem; the deed was then absolute.

Keeney was a purchaser for a bona fide consideration, without notice, and if Chamberlain had notice Keeney will be protected. *Demarest* vs. *Wyncoop*, 3 *J. C. R.*, 147; *Jackson* vs. *Giv.*, 8 *John's R.*, 141. *Act concerning mortgages, see laws* 1833, *p.* 283, *Sec.* 2, *also act concerning deeds, &c., Ib., p.* 279, *Sec.* 2.

Draper and Richardson are protected as well as Keeney, under the principle that a purchaser *with notice* to himself from one who purchased *without notice*, may protect himself under the first purchaser. *Bumps* vs. *Platner, et al.*, 1 *J. C. R.*, 213.

THE CHANCELLOR. From the facts stated in the bill, answer and testimony, there can be no doubt that the conveyance from Mack to Chamberlain was a mortgage, and a mortgage only in its inception; and it is evident that it so continued, and was so regarded until the transactions were closed by the payment of the amount due to Chamberlain, and the conveyance to Keeney.

It is admitted to have been so in the first instance.

Chamberlain, in his testimony says, that the instrument of defeasance was given up, so that the estate conveyed should remain as security for further advances.

The account with Mack was not closed at that time.

Chamberlain says he should, at any time, have re-conveyed to Mack upon payment of the amount due, and an allowance for his trouble in securing his debt.

He did actually convey the premises to Keeney, the father-in-law of Mack, upon payment of the advances made by him, and the charges for his trouble. .

The statute (*Laws of* 1833, *page* 284, *section* 3,) provides that "every deed conveying real estate, which by any other instrument or writing, shall appear to have been intended as security, in the nature of a mortgage, though it be an absolute conveyance in terms, shall be considered as a mortgage and be deemed and adjudged to be liable to be registered as other mortgages are by virtue of this act; and the person or persons for whose benefit such deed shall be made, shall not have the advantage given by this act to mortgages, unless every instrument and writing operating as a defeasance of the same, or explanatory of its being designed to have the effect only of a mortgage or conditional deed, be also herewith registered in substance as in case of mortgages."

The deed of Chamberlain with the writing or agreement to Mack, ought to have been registered as a mortgage. The recording of that deed, as a *deed*, though the record was prior to that of Thompson's mortgage, can give it no priority over that mortgage. See *Dey* vs. *Dunham*, 2 *J. C. R.*, 182; *Grimstone* vs. *Carter*, 3 *Paige, R.*, 421.

Four days after the record of the deed from Mack to Chamberlain, Thompson recorded his mortgage and thus gave notice of its existence.

Keeney claims, however, to have been a purchaser without notice.

But if in fact the transactions between Mack and Chamberlain constituted the instrument a mortgage and no more, the record of the mortgage of Thompson should be regarded as a sufficient notice to a subsequent purchaser.

The fact of a subsequent sale, especially while the mortgage of Thompson was standing upon the record, would not change the character of the transaction between Mack and Chamberlain. It would defeat the salutary provisions of the statute to permit it to be evaded by a sale to another when the party claiming (as in this case Thompson had done,) had placed his mortgage upon record.

The mortgage to Thompson being of prior date, without reference to the registry laws would have priority; the defendants claim priority, by virtue of the provisions of the statute. In order to entitle themselves to such priority, they must conform to its terms, which has not been done.

Mack sets out in his answer, that the mortgage is nearly or quite paid. This will render it necessary that it be referred to a master to examine and report the amount due upon the mortgage, after allowing all proper credits and offsets, and to report to this court with convenient speed; and further directions reserved until the coming in of the master's report,